**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BENJAMIN ABELLA, individually and on behalf of all others similarly situated, | Case No. 2:15-cv-03067-SD |
| *Plaintiff*, | Hon. Stewart Dalzell |
| *v.* | |
| STUDENT AID CENTER, INC., a Florida corporation, and MOZEO, LLC, a New York limited liability company, | |
| *Defendants*. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT**
**STUDENT AID CENTER, INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................3

ARGUMENT ........................................................................................................4

I.     Plaintiff's Complaint Should not be Dismissed Pursuant to Rule 12(b)(6) .................4

     a.     Plaintiff is not Required to Allege that He was Charged for Defendant's Text Messages in Order to State Claim Under the TCPA ................................5

     b.     Plaintiff's Allegation Regarding the Number of Potential Class Members at Issue is Sufficient at this Stage of the Litigation ..............................7

II.     Plaintiff's Complaint Should not be Dismissed Pursuant to Rule 12(b)(1) .................9

     a.     As an Initial Matter, the Third Circuit (and Every Other Circuit Court to Consider the Issue) has Been Clear that an Unaccepted Rule 68 Offer of Judgment Cannot Alone Defeat a Class Case ....................................10

     b.     Defendant's Rule 68 Offer would not Provide Plaintiff the Complete Relief He is Seeking ..........................................................11

III.     The Court Should Deny Defendant's Motion to Strike ..............................................12

     a.     Plaintiff's Class Definition is not Fail-Safe and Need not be Stricken ...........13

     b.     Plaintiff's Use of the Word "Legion" is not Scandalous or Prejudicial .........16

IV.     Defendant's Request for a More Definite Statement Should be Denied ....................17

CONCLUSION ...................................................................................................19

## TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................4

*Genesis Healthcare Corporation v. Symczyk*,
    133 S. Ct. 1523 (2013)..................................................................................10

**United States Court of Appeals Cases:**

*Alston v. Parker*,
    363 F.3d 229 (3d Cir. 2004)..........................................................................20

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
    798 F.3d 46 (1st Cir. 2015)...........................................................................10

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015)....................................................................13, 14

*Chapman v. First Index, Inc.*,
    796 F.3d 783 (7th Cir. 2015) .......................................................................10

*Diaz v. First Am. Home Buyers Prot. Corp.*,
    732 F.3d 948 (9th Cir. 2013) .......................................................................10

*Grayson v. Mayview State Hosp.*,
    293 F.3d 103 (3d Cir. 2002)..........................................................................20

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F.3d 349 (3d Cir. 2013)..........................................................................13

*Hooks v. Landmark Indus., Inc.*,
    797 F.3d 309 (5th Cir. 2015) .......................................................................10

*Hrivnak v. NCO Portfolio Mgmt., Inc.*,
    719 F.3d 564 (6th Cir. 2013) .......................................................................12

*In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*,
    795 F.3d 380 (3d Cir. 2015)..........................................................................14

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
   640 F.3d 72 (3d Cir. 2011)..................................................................8, 13

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ......................................................................16

*Osorio v. State Farm Bank, F.S.B.*,
   746 F. 3d 1242 (11th Cir. 2014) ...............................................................5-6

*Phillips v. Cnty of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)..........................................................................4

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
   646 F.3d 347 (6th Cir. 2011) ......................................................................16

*Stein v. Buccaneers Ltd. P'ship*,
   772 F.3d 698 (11th Cir. 2014) ....................................................................10

*Tanasi v. New Alliance Bank*,
   786 F.3d 195 (2d Cir. 2015)........................................................................10

*Turicentro, S.A. v. American Airlines Inc.*,
   303 F.3d 293 (3d Cir. 2002)...........................................................................9

*Weiss v. Regal Collections*,
   385 F.3d 337 (3d Cir. 2004)........................................................................12

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984)............................................................. 9, 10-11

*Wilkerson v. Bowen*,
   828 F.2d 117 (3d Cir. 1987).........................................................................11

**United States District Court Cases:**

*Batoff v. Charbonneau*,
   --- F. Supp. 3d ----, 2015 WL 5460571 (E.D. Pa. Sept. 16, 2015) ....................................4

*Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*,
   No. 12-cv-929, 2015 WL 401443 (W.D. Pa. Jan. 28, 2015) ............................................15

*CE Design, Ltd. V. Cy's Crabhouse North, Inc.*,
   259 F.R.D. 135 (N.D. Ill. 2009).....................................................................

*Collier v. Montgomery Cnty. Hous. Auth.*,
   192 F.R.D. 176 (E.D. Pa. 2000).......................................................................7

*Conklin v. Anthou*,
    No. 10-cv-02501, 2011 WL 1303299 (M.D. Pa. Apr. 5, 2011)..........................................17

*Country Classics at Morgan Hill Homeowner's Ass'n, Inc. v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367 (E.D. Pa. 2011)...................................................18

*G.M. Sign, Inc. v. Franklin Bank, SSB*,
    No. 06-cv-949, 2007 WL 4365359 (N.D. Ill. Dec. 13, 2007)..........................................16

*G.M. Sign, Inc., v. Group C Commn's, Inc.*,
    No. 08-cv-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010)..........................................15

*Gateway Bottling, Inc. v. Dad's Rootbeer Co.*,
    53 F.R.D. 585 (W.D. Pa. 1971)....................................................................................17

*Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
    284 F.R.D. 238 (E.D. Pa. 2012)....................................................................................7

*Gross v. Weinsten, Weinburg & Fox LLC*,
    --- F. Supp. 3d ----, 2015 WL 5012309 (D. Del. Aug. 24, 2015) ......................................18

*Haghayeghi v. Guess?, Inc.*,
    No. 14-cv-00020, 2015 WL 1345302 (N.D. Cal. Mar. 24, 2015) ...................................16

*Hinman v. M and M Rental Center*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ...........................................................................15

*Holtzman v. Turza*,
    No. 08-cv-2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) .........................................15

*Hornicek v. Cardworks Servicing, LLC*,
    No. 10-cv-3631, 2011 WL 1419607 (E.D. Pa. Mar. 18, 2011) .........................................11

*Humphreys v. Budget Rent a Car Sys. Inc.*,
    No. 10-cv-1302, 2014 WL 1608391 (E.D. Pa. Apr. 22, 2014)..........................................8

*Johnson v. Anhorn*,
    334 F. Supp. 2d 802 (E.D. Pa. 2004) ...........................................................................17

*Kerrigan v. Phil. Bd. of Election*,
    248 F.R.D. 470 (E.D. Pa. 2008)..................................................................................7, 9

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
    --- F.R.D. ----, 2015 WL 4522855 (E.D. Pa. July 27, 2015)..............................................9

*Korman v. The Walking Co.*,
  503 F. Supp. 2d 755 (E.D. Pa. 2007) ...................................................13

*Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*,
  No. 08-cv-481, 2009 WL 602019 (W.D. Wis. Mar. 9, 2009)..........................5

*Leon v. Target Corp.*,
  No. 15-cv-01, 2015 WL 1275918 (M.D. Pa. Mar. 19, 2015) ...........................7

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
  No. 12-cv-221, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013) .........................16

*Manno v. Healthcare Revenue Recovery Grp.*,
  289 F.R.D. 674 (S.D. Fla. 2013)........................................................5

*Mielo v. Aurora Huts, LLC*,
  No. 14-cv-1162, 2015 WL 106631 (W.D. Pa. Jan. 7, 2015) ...........................18

*Mills v. Serv. First Credit Union*,
  No. 11-cv-686, 2011 WL 3236313 (M.D. Pa. July 28, 2011) .........................8

*Moore v. Dish Network L.L.C.*,
  57 F. Supp. 3d 639 (N.D.W. Va. 2014) ................................................6

*Panacci v. A1 Solar Power, Inc.*,
  No. 15-cv-532, 2015 WL 3750112 (N.D. Cal. June 15, 2015).........................19

*Robbins v. Coca-Cola-Company*,
  No. 13-cv-132, 2013 WL 2252646 (S.D. Cal. May 22, 2013) ........................19

*Sacchi v. Care One, LLC*,
  Nos. 14-cv-00698, *et al*, 2015 WL 3966034 (D.N.J. June 30, 2015) ................5

*Sauter v. CVS Pharmacy, Inc.*,
  No. 13-cv-846, 2014 WL 1814076 (S.D. Oh. May 7, 2014)..........................16

*Shamblin v. Obama for Am.*,
  No. 13-cv-2428, 2014 WL 6686328 (M.D. Fla. Nov. 26, 2014)......................12

*Smolow v. Hafer*,
  353 F. Supp. 2d 561 (E.D. Pa. 2005). ..............................................9, 11

*Soular v. N. Tier Energy LP*,
  No. 15-cv-556, 2015 WL 5024786 (D. Minn. Aug. 25, 2015)....................14-15

*St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*,
 No. 12-cv-02224, 2013 WL 1076540 (E.D. Mo. Mar. 13, 2013)....................................16

*Taylor v. Universal Auto Grp. I, Inc.*,
 No. 13-cv-5245, 2014 WL 2987395 (W.D. Wash. July 1, 2014)......................................6

*Wigton v. Kaplan*,
 No. 10-cv-1768, 2014 WL 4272791 (W.D. Pa. Aug. 29, 2014).....................................11

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
 80 F. Supp. 3d 610 (E.D. Pa. 2015) .................................................................13, 14, 16

*Zeigenfuse v. Apex Asset Mgmnt, L.L.C.*,
 239 F.R.D. 400 (E.D. Pa. 2006)......................................................................................11

**Statutes and Rules:**

47 U.S.C. § 227 ..................................................................................................... *passim*

Fed. R. Civ. P. 12 ................................................................................................. *passim*

Fed. R. Civ. P. 23 ...............................................................................................1, 2, 13

Fed. R. Civ. P. 68 ...........................................................................................10, 11, 12

**Other Sources:**

3 Newberg on Class Actions (4th ed. 2004) ..............................................................13

*Merriam Webster Dictionary*: legion,
 *available at* http://www.merriam-webster.com/dictionary/legion
 (last accessed October 7, 2015)17 .............................................................................17

## INTRODUCTION

This action challenges Defendants Student Aid Center, Inc.'s ("Student Aid Center" or "Defendant") and Mozeo, LLC's ("Mozeo") sending of unsolicited promotional text messages to consumers nationwide in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff Benjamin Abella ("Abella" or "Plaintiff") is one such individual who received Defendants' unsolicited messages, first promoting Student Aid Center's loan consolidation and forgiveness services and later (after he requested that they stop), messages promoting Mozeo's marketing services. In an effort to ensure that Defendants' unlawful calling practices do not continue into the future and to obtain the relief to which he and the putative classes are entitled, Abella filed the instant lawsuit.

Defendant Student Aid Center now seeks, pursuant to Federal Rules 12(b)(1), 12(b)(6), 12(e) and 12(f), an Order dismissing and striking Plaintiff's First Amended Complaint ("FAC") or, in the alternative, for a more definite statement.[1] (Dkt. 21 ["Def. Mot."].) In support, Student Aid Center raises a number of unsupported and ultimately, unavailing arguments. First, it contends that Plaintiff's TCPA claims must be dismissed under Rule 12(b)(6) because he didn't allege that he was charged for the text messages he received and his allegations regarding Rule 23's numerosity requirement being satisfied are supposedly based on speculation. It also argues that the Court lacks subject matter jurisdiction because its Rule 68 offer of judgment has mooted Abella's claims. It argues that the proposed class definition should be stricken because the definition is impermissibly "fail-safe" and further, that the word "legion" (as included in one allegation in the FAC) should be stricken as prejudicial. And, it argues that if the FAC is not

---

[1] It is unclear exactly which arguments Student Aid Center seeks to assert here, as its motion and supporting memorandum advance somewhat differing arguments. (*See* generally Def. Mot.) For the sake of completeness, however, Plaintiff responds to each of the arguments raised in both documents.

dismissed and the allegations in question are not stricken, the Court should at least require Plaintiff to provide a more definite statement regarding which calls and putative class members are at issue. Each of these arguments fails.

First, Plaintiff is not required to allege that he was charged for any of the messages in order to state a claim for relief under the TCPA. The statute itself and the case law interpreting it are clear that Abella's allegations regarding his receipt of the messages are enough.

Second, Plaintiff has pleaded as many facts as are available to him regarding the number of putative class members at issue, all of which suggest that there are 40 or more individuals that received the messages at issue and thus, that Rule 23's numerosity requirement is satisfied. The fact that Plaintiff does not know the exact number of class members at this early stage of the litigation is unremarkable and certainly not a basis for dismissal.

Third, Defendant's Rule 68 offer of judgment does not act to moot Abella's claims for a multitude of reasons. For one, every Circuit Court to consider the issue has held that an unaccepted offer of judgment does not relieve a putative class representative of his right to proceed on behalf of a class. But even if that wasn't the case, Plaintiff in fact filed a motion for class certification prior to the offer being made (thus protecting his right to proceed on a class basis), and the offer wasn't for the full relief he seeks to recover here anyway.

Fourth, no portion of Plaintiff's FAC should be stricken. Indeed, the putative class definition set forth in the FAC is far from fail-safe—it is based on objective criteria, including records that are within Defendant's own possession, and simply does not require a determination as to Defendants' ultimate liability to establish any individual's membership in the class. Beyond that, Plaintiff's use of the word "legion" can't possibly be prejudicial—it simply and accurately describes the fact that the online complaints about Defendants' conduct are "great in number."

And finally, there is no reason for Plaintiff to provide a more definite statement regarding the calls received by every other individual in the putative class. Plaintiff not only identified each Defendant's role in the telemarketing campaign, but also provided the text messages and identified when he received them, specified the short code they were sent from, and established that all of the text messages included the same instructions and had the same overarching message. Courts have regularly found similar allegations sufficient, and nothing more need be pleaded.

For all of these reasons and as explained further below, Student Aid Center's motion to dismiss, strike, and/or for a more definite statement should be denied in its entirety.

## BACKGROUND

Defendants' TCPA violations stem from their joint effort to promote Student Aid Center's loan services. (Dkt. 20 ["FAC"] ¶¶ 1-2.) In particular, Student Aid Center—a student loan consolidation and forgiveness service—sought to hire a telemarketer to conduct a nationwide bulk text messaging campaign to solicit customers for its loan services. (*Id.* ¶¶ 10-12.) To effectuate the campaign, Student Aid Center hired Defendant Mozeo—a telemarketer that claims "[t]ext message blasting is [its] core mobile marketing service" (*id.* ¶ 11)—to conduct a nationwide "bulk sms text blast." (*Id.* ¶¶ 12, 14.) The text messages were sent from short code 245-87 and included solicitations to sign up for student loan forgiveness and consolidation programs by visiting Student Aid Center's website or calling. (*Id.* ¶ 15.)

This telemarketing plan is problematic for a number of reasons. First, Defendants never sought consent from consumers prior to sending the text messages at issue. (*Id.* ¶¶ 13, 25, 31.) Second, when individuals requested that they stop, Defendant Mozeo sent another text message—this time promoting its own services. (*Id.* ¶¶ 17-18.) And finally, the text-messaging

platform used was an automatic telephone dialing system or "ATDS" as contemplated by the TCPA and allowed Defendants to send text messages *en masse* to either designated phone numbers or random ones. (*Id.* ¶¶ 20-24.)

Plaintiff Abella was one such individual who received numerous and repeated text messages from the short code 245-87 despite not having any student loans and not seeking any such services. (*Id.* ¶¶ 26, 28.) After receiving six text messages, Abella replied "STOP" in an effort to be taken off of Defendants' messaging list. (*Id.* ¶ 27.) Rather than stop texting him, Defendant Mozeo instead sent a promotional text message of its own, identifying itself as the sender of the messages and providing its own phone number. (*Id.* ¶ 28.)

## ARGUMENT

### I.      Plaintiff's Complaint Should not be Dismissed Pursuant to Rule 12(b)(6).

"In evaluating a motion to dismiss under Rule 12(b)(6), courts must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Batoff v. Charbonneau*, --- F. Supp. 3d ----, 2015 WL 5460571, at *4 (E.D. Pa. Sept. 16, 2015) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 570). Abella's allegations far surpass federal pleading requirements. Nevertheless, Defendant lodges several attacks on the sufficiency of Plaintiff's claims pursuant to Rule 12(b)(6), each of which miss their mark and are taken in turn below.

a.     **Plaintiff is not Required to Allege that He was Charged for Defendant's Text Messages in Order to State Claim Under the TCPA.**

First, Defendant's argument that Plaintiff was required to, but did not, allege he was charged for the text messages he received is a non-starter. Put simply, "the TCPA does not require the plaintiff to be 'charged for' the calls in order to have standing to sue." *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 683 (S.D. Fla. 2013); *see also Sacchi v. Care One, LLC*, Nos. 14-cv-00698, *et al*, 2015 WL 3966034, at *5 (D.N.J. June 30, 2015) ("The 'called party' has standing to bring suit against a person or entity that violates the TCPA, even if the called party has suffered no actual harm.") (citing 47 U.S.C. § 227(b)(1)(B); *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, No. 08-cv-481, 2009 WL 602019, at *3 (W.D. Wis. Mar. 9, 2009)).

Defendant's position arises from a mistaken understanding of the provision in the TCPA that makes it unlawful to place calls using an autodialer,

> to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, *or any service for which the called party is charged for the call*….

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). That is, Defendant's focus on the last phrase— "or any service for which the called party is charged for the call"—is misplaced inasmuch as that language clearly refers to a wholly separate service and is not meant to modify the other services listed before it—i.e., telephone numbers assigned to "a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service." *See Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1257 (11th Cir. 2014). A plain reading of the TCPA itself and the breadth of case law on the issue make that clear.

To start, "[t]he rule of the last antecedent requires the phrase 'for which the called party is charged for the call'…to be applied to the words or phrase immediately precedent…and…not

to be construed as extending to or including others more remote…namely, 'paging,' 'cellular telephone,' or 'mobile radio' services." *Id.* at 1257 (internal quotations and citations omitted). Thus, the phrase "for which the called party is charged for the call" does not apply to the other services listed before it, including calls made to cellular telephones like those at issue here. *Id.*; *see also Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 647 (N.D.W. Va. 2014) (using the "rule of last antecedent" to find that the phrase "charged for the call" applies to the phrase "any service") (collecting cases). Indeed, "[i]f the phrase 'any service for which the called party is charged for the call' requires that the party be charged per call for the 'paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service'…then the listing of these services would be superfluous because they are already included under the term 'any service for which the called party is charged.'" *Osorio*, 746 F.3d at 1258.

Defendant's reliance on the "exemption" in 47 U.S.C. § 227(b)(2)(C)—which grants the Commission authority to "by rule or order, exempt from the requirements of paragraph (1)(A)(iii)…calls to a telephone number assigned to a cellular telephone service that are not charged to the called party…."—requires no different result. Instead, the existence of the exemption further establishes that the general rule makes it unlawful to place calls to cellular telephones whether or not the party is charged for the call, *Osorio*, 746 F.3d at 1258, as "the provision allowing for the promulgation of exemptions would be meaningless if…§ 227(b)(1)(A)(iii) already exempts all calls for which the party is not charged per call." *Taylor v. Universal Auto Grp. I, Inc.*, No. 13-cv-5245, 2014 WL 2987395, at *4 (W.D. Wash. July 1, 2014) (citing *Osorio*, 746 F.3d at 1258).

Accordingly, neither 47 U.S.C. § 227(b)(1)(A)(iii) nor 47 U.S.C. § 227(b)(2)(C) require that individuals be charged for unsolicited calls placed to their cellular phones.[2]

**b.    Plaintiff's Allegation Regarding the Number of Potential Class Members at Issue is Sufficient at this Stage of the Litigation.**

Defendant next argues that Abella's claim should be dismissed pursuant to Rule 12(b)(6) because his allegation regarding the number of putative class members at issue is "unsupported by fact and…too conclusory to be true." (Def. Mot. at 6.)[3] That argument also fails.

As an initial matter, representative plaintiffs aren't even required to identify the exact number of putative class members at the class certification stage, let alone at the pleadings stage of the litigation. *Kerrigan v. Phil. Bd. of Election*, 248 F.R.D. 470, 474 (E.D. Pa. 2008) (holding that a plaintiff need only provide a good-faith estimate of the class size); *Collier v. Montgomery Cnty. Hous. Auth.*, 192 F.R.D. 176, 182 (E.D. Pa. 2000) ("The exact size of a class need not be known so long as it can be shown that it is sufficiently large to meet the numerosity requirements.") (citations omitted). Instead, they must simply provide an estimate of the class

---

[2]    Defendant also argues, in passing and without citing any authority, that Plaintiff's claim fails because the "Amended Complaint does not even contain conclusory statements that he owned the telephone which was called[ and] it does not mention the number that was called…." (Def. Mot. at 8.) That argument is also misplaced inasmuch as Plaintiff need not own the cellular phone that he received the calls on as long as he was the "called party," *see* 47 U.S.C. § 227 (b)(1)(A)(iii), nor does he need to provide his phone number. *Leon v. Target Corp.*, No. 15-cv-01, 2015 WL 1275918, at *3 (M.D. Pa. Mar. 19, 2015) (finding that a plaintiff need not allege his telephone number to state a claim under the TCPA). In any event, Plaintiff stated that he received the calls on *his* cell phone. (*See, e.g.,* FAC ¶ 26 ("Defendants began transmitting numerous unwanted text messages from the short code 245-87 to Plaintiff Abella's cellular telephone.").)

[3]    Here, Defendant bases its argument that Plaintiff has failed to allege with sufficient specificity the number of class members at issue pursuant to Rule 12(b)(6). That argument, however, aligns more closely with its request to strike the class allegations. And as explained further in Section III, *infra*, motions to strike filed so early in the litigation are disfavored and regularly denied as premature. *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 245 (E.D. Pa. 2012) (denying motion to strike because "[d]iscovery and full briefing on the merits of class certification are typically required" to determine the appropriateness of class certification.").

size, and courts may then use common sense to determine whether that estimate supports a finding that joinder is impracticable. *Kerrigan*, 248 F.R.D. at 474. This is especially true at the pleadings stage, as the parties have not engaged in discovery and the plaintiffs' allegations are based largely on their own investigations. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011) (holding a district court's ruling on class certification was "premature" at the motion to dismiss stage because courts must conduct a rigorous analysis to determine the propriety of class certification, which requires discovery); *Mills v. Serv. First Credit Union*, No. 11-cv-686, 2011 WL 3236313, at *1 (M.D. Pa. July 28, 2011) (denying motion to dismiss regarding certification issues "solely on the basis of the pleadings" when parties had not engaged in discovery). Not surprisingly then, "determination of class certification on a motion to dismiss is premature and rare…." *Humphreys v. Budget Rent a Car Sys. Inc.*, No. 10-cv-1302, 2014 WL 1608391, at *11 (E.D. Pa. Apr. 22, 2014).

That aside, Plaintiff has alleged far more in his FAC than the simple conclusion that Rule 23's numerosity requirement will be satisfied. He alleges not only that "Student Aid Center partnered with Defendant Mozeo to conduct a nationwide 'bulk sms text blast,'" (FAC ¶ 12), but also that Student Aid Center can send *thousands* of text messages at a time using the bulk-blasting option on the ATDS used. (*Id.* ¶¶ 20-21, 23-24.) Plaintiff also alleges that Student Aid Center has been sending text messages for years and that there are numerous consumer complaints online documenting its conduct in this regard. (*Id.*¶ 16.)[4] The clear import of these allegations and the publicly available information they are based upon is four-fold: (i) Defendant

---

[4]      Plaintiff also alleges that he does not have a student loan and has had no relationship with either Defendant in the past. (FAC ¶¶ 28-29.) Thus, it is likely that his receipt of Student Aid Center's text messages is based on its use of Mozeo's application programming interface which allows for the sending of text messages to random telephone numbers. (*Id.* ¶ 23.) If that is the case, there is even more reason to believe that the text messages were sent *en masse* and that thousands of individuals have received them.

has been conducting a *nationwide* text messaging campaign, (ii) for *several years*, (iii) messaging not only its customers but *random non-customer phone numbers* as well, (iv) all of which is documented in *numerous online consumer complaints*. Thus, the idea that "Plaintiff is merely guessing that these purported thousands of call were all 'unsolicited' and made without the prior express consent of the called parties using an automatic telephone dialing system" is hard to see, and Defendant hasn't presented anything to suggest otherwise. (Def. Mot. at 8–9); *see also King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, --- F.R.D. ----, 2015 WL 4522855, at *4 (E.D. Pa. July 27, 2015) (recognizing that "while there are exceptions, numbers in excess of forty, particularly those exceeding one hundred or one thousand[,] have sustained the [numerosity] requirement.") (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 808 n.35 (3d Cir. 1984)).[5]

For these reasons and at this stage of the proceedings, Plaintiff's allegations regarding the potential size of the class are more than satisfactory and certainly do not require dismissal.

## II.    Plaintiff's Complaint Should not be Dismissed Pursuant to Rule 12(b)(1).

Defendants can challenge subject matter jurisdiction pursuant to Rule 12(b)(1) by arguing that the court lacks subject matter jurisdiction either facially or factually. *Turicentro, S.A. v. American Airlines Inc.,* 303 F.3d 293, 300 n.4 (3d Cir. 2002). When a defendant makes a factual challenge as to the court's subject matter jurisdiction, the court may consider the merits of the plaintiff's claim itself and, in doing so, may consider outside affidavits or evidence. *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005).

---

[5]     Of course, Defendants' own records will ultimately establish (i) how many text messages were actually sent, (ii) to how many individuals, and (iii) whether they had consent to send those messages.

Here, Defendant makes—albeit in passing[6]—a factual attack on Plaintiff's FAC by arguing that the Court does not have subject matter jurisdiction over Plaintiff's claims because it "served Plaintiff with a Rule 68 Proposal for Settlement which would fully resolve all of his claims…." (Def. Mot. at 3.) That argument fails for multiple reasons, and Defendant offers no evidence to establish otherwise.

> **a.   As an Initial Matter, the Third Circuit (and Every Other Circuit Court to Consider the Issue) has Been Clear that an Unaccepted Rule 68 Offer of Judgment Cannot Alone Defeat a Class Case.**

First, even if Defendant's Rule 68 offer provided for the complete relief Plaintiff seeks—as explained below, it does not—it still would not act to moot his claims or his ability to pursue claims on behalf of the putative class. As Justice Kagan pointed out in *Genesis Healthcare Corporation v. Symczyk*, "[a]n unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect." 133 S. Ct. 1523, 1533 (2013) (Kagan, J., dissenting). And that is why every Circuit Court to consider the issue after *Genesis*,[7] has held that the rejection of an offer of judgment fully satisfying a plaintiff's demands *does not* render a case moot. For its part, the Third Circuit has taken a similar position, holding that "where a defendant makes a Rule 68 offer to an individual [plaintiff] that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification

---

[6]     On this point, Defendant oddly raises the issue of a Rule 68 offer of judgment in its speaking motion (*see* Def. Mot. at 3 ¶ 9), but fails to address it anywhere in its supporting Memorandum of Law. (*See generally* Def. Mot.) It appears that Defendant merely "raise[d] this issue so as to preserve its rights," (Def. Mot. at 3 n.2), but Plaintiff fully responds for the sake of completeness.

[7]     *See Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 52 (1st Cir. 2015); *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 315 (5th Cir. 2015); *Tanasi v. New Alliance Bank,* 786 F.3d 195, 200 (2d Cir. 2015), petition for cert. pending, No. 15-84 (filed July 17, 2015); *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 702-04 (11th Cir. 2014); *Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F.3d 948, 954-55 (9th Cir. 2013); *Chapman v. First Index, Inc.*, 796 F.3d 783, 786-87 (7th Cir. 2015).

motion back to the filing of the class complaint." *Weiss*, 385 F.3d at 348; *see also Smolow*, 353 F. Supp. 2d at 567 ("following the filing of a class complaint and prior to moving for certification, a defendant cannot render class claims moot by offering the named plaintiff the full amount of his individual claim.") (citing *Weiss*, 385 F.3d 337); *Zeigenfuse v. Apex Asset Mgmnt, L.L.C.*, 239 F.R.D. 400, 403 (E.D. Pa. 2006) (striking a Defendant's offer of judgment when it was made while a motion for class certification was pending and its "purpose [was] to dampen the efforts of the putative representative in pursuing the class action, if not to cause her to withdraw."). The idea being to prevent a defendant from "thwart[ing] the putative class action before the certification question could be decided." *See Weiss*, 385 F. 3d at 349.

Here, Abella had already filed a motion for class certification by the time Defendant made its Rule 68 offer, thus further protecting his claims from any potential mootness. (*See* dkt. 2.) Indeed, "[t]he Third Circuit has held that when the claim of a proposed class plaintiff is resolved while a class certification motion is pending, that plaintiff is not automatically disqualified from being a class representative so long as he retains a personal stake in the outcome of the litigation." *Wigton v. Kaplan*, No. 10-cv-1768, 2014 WL 4272791, at *7 (W.D. Pa. Aug. 29, 2014) (citing *Wilkerson v. Bowen*, 828 F.2d 117, 121 (3d Cir. 1987)); *see also Hornicek v. Cardworks Servicing, LLC*, No. 10-cv-3631, 2011 WL 1419607, at *1 (E.D. Pa. Mar. 18, 2011) (striking Rule 68 offer and holding that "[i]t is undisputed that a Rule 68 offer of judgment is improper when directed at an individual plaintiff in a potential class action suit, unless there is undue delay in [f]iling a motion for class certification." ) (quotation omitted)).

### b.    Defendant's Rule 68 Offer would not Provide Plaintiff the Complete Relief He is Seeking.

Moreover, Defendant's Rule 68 offer would *not* provide Plaintiff the complete relief he seeks here. In particular, Plaintiff requested in his FAC, *inter alia*, "an award of actual and

statutory damages," "an award of reasonable attorneys' fees and costs," and "*an injunction requiring Defendants to cease all unsolicited text messaging activities and otherwise protecting the interests of the Classes.*" (*See* FAC Prayer for Relief) (emphasis added); *see also* 47 U.S.C. § 227(b)(3) ("A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—(A) an action based on a violation of this subsection or the regulations prescribed under this subjection to enjoin such violation….").

The Rule 68 offer, however, did not so much as mention injunctive relief, let alone explain that both it *and Mozeo* would cease their unsolicited telemarketing practices. Thus, Defendant has not made a full offer of relief, rendering it inadequate to moot Plaintiff's claims anyway. *See, e.g., Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 568 (6th Cir. 2013) (finding that a plaintiff's claim was not mooted when the defendant failed to offer the requested injunctive relief, because "defendants did not offer to satisfy all of [the] individual demands."); *Shamblin v. Obama for Am.*, No. 13-cv-2428, 2014 WL 6686328, at *6 (M.D. Fla. Nov. 26, 2014) ("as the TCPA provides that an injunction is an appropriate remedy sought under the statute, and because [the plaintiff] did in fact seek to enjoin all the [d]efendants in this action, an Offer of Judgment without full injunctive relief diminishes the value of the judgment [the plaintiff] seeks."); *cf Weiss v. Regal Collections*, 385 F.3d 337, 340-42 (3d Cir. 2004) (finding that a Rule 68 offer under a different statute did not need to provide for the requested injunctive relief because the statute at issue did not allow for it).

## III.    The Court Should Deny Defendant's Motion to Strike.

Defendant also asks the Court to strike Plaintiff's (i) class definition because it is impermissibly "fail-safe," and (ii) use of the word "legion" to describe the number of complaints posted online because it is supposedly scandalous. Each of its arguments fails here as well.

As an initial matter, although Rule 12 allows courts to strike portions of pleadings if they are determined to be "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), and Rule 23 states that the court must determine whether to certify a class as early as "practicable," Fed. R. Civ. P. 23(c)(1)(A), motions to strike are disfavored under both rules. *See Landsman & Funk PC*, 640 F.3d at 93 (recognizing that a Court must conduct a "rigorous analysis" to determine whether class certification is appropriate and finding that a district court's decision was premature when it was made without discovery and on a motion to dismiss); *Korman v. The Walking Co.*, 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007) (finding that "[i]t would be improper to allow [a defendant] to slip through the backdoor" and move to strike class allegations pursuant to Rule 23(d)(4) when, *inter alia*, "discovery on the issue is still ongoing."). This is because in all cases filed as class actions, Rule 23 gives courts the flexibility to ensure that the factual record is sufficiently developed before making class determinations. *See* 3 Newberg on Class Actions § 7.14 (4th ed. 2004).

a.     **Plaintiff's Class Definition is not Fail-Safe and Need not be Stricken.**

First, Defendant's argument that Plaintiff's class definition should be stricken because it is impermissibly "fail-safe" is wrong. (Def. Mot. at 9.) Class definitions must be "defined with reference to objective criteria" and there must be "a reliable and administratively feasible mechanism for determining" which individuals fall into the class. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). On the other hand, "[a] fail-safe class is one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015). Fail-safe class definitions are problematic because they revolve around the defendant's ultimate liability—

"either the class members win or, if the defense prevails, no class exists, and the putative class members, unbound by any judgment are free to pursue individual claims." *Id.* at 624.

The Student Aid Center class definition here is appropriate in all respects. The "Class" includes "All persons in the United States who (1) received a text message call; (2) from (or on behalf of) Defendants; (3) that was made for the purpose of promoting Defendant Student Aid Center's products and services; and (4) for whom Defendants have no record of express consent to make such text message calls at the time they were made." (FAC ¶ 32.) The Class is thus "defined with reference to objective criteria," *Byrd*, 784 F.3d at 355 (citation omitted), because it includes only those individuals who received text messages and for whom Defendant lacks a physical record of consent. Defendant's records of the messages sent and to whom should alone easily establish who falls within the Class. *See In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 397 (3d Cir. 2015) (recognizing that ascertainability can be determined through a defendant's records).

Second, the Class definition is a far cry from being fail-safe, because an individual's membership in the Class does not depend on Defendant's ultimate liability in the matter. More specifically, to state a claim under the TCPA, a plaintiff must prove that he (1) received a text message (2) on his cellular phone (3) that was sent from an automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1)(A)(iii). While the Class definition includes the first two elements, it does not include the third. (FAC ¶ 32.) Accordingly, whether a person falls within the Class definition simply cannot turn on "whether the person has a valid claim." *See Zarichny*, 80 F. Supp. 3d at 623. Not surprisingly, other courts to consider the issue have found similar class definitions to be proper. *See, e.g., Soular v. N. Tier Energy LP*, No. 15-cv-556, 2015 WL 5024786, at *9 (D. Minn. Aug. 25, 2015) ("Here, as Plaintiff notes, the proposed class definition

makes no reference to Defendants' use of an ATDS. Accordingly, individuals could qualify as class members even if they do not have a valid claim—i.e., if they received a text message from Defendants that was not sent via an ATDS. For these reasons, Defendants have not adequately demonstrated that Plaintiff's class definition is improper.").

Defendant's attempt to muddy the waters by raising the presence of consent in the Class definition doesn't change that, especially because Plaintiff alleges that Student Aid Center sent its text messages *en masse* through text blasts. Such bulk transmission erases any issues of individualized consent and shows that Defendant acted uniformly as to all Class members. Indeed, Class membership here can be determined by analyzing objective criteria related *solely* to Defendants—i.e., Defendants' internal records of the consent obtained, Defendants' decision to send text messages to certain telephone numbers, Defendants' internal records of the calls made, and the like. *See, e.g., Holtzman v. Turza*, No. 08-cv-2014, 2009 WL 3334909, at *6 (N.D. Ill. Oct. 14, 2009) (finding that a class definition that required an individual's purported lack of consent was not a fail-safe definition when the defendant fax blasted thousands of fax machines); *G.M. Sign, Inc., v. Group C Commn's, Inc.*, No. 08-cv-4521, 2010 WL 744262, at *3 (N.D. Ill. Feb. 25, 2010) (refusing to find that the presence of "consent" in a TCPA class definition rendered the class definition improper); *Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) (certifying a class that included only individuals who did not provide consent because "by certifying a class of individuals who received unsolicited faxes, [it] was 'merely setting the boundaries of the class,' not resolving the substantive issues.") (citations omitted).[8]

---

[8]   Defendant's authorities require no different result, as each class definition is readily distinguishable from the one at issue here. *See Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, No. 12-cv-929, 2015 WL 401443 (W.D. Pa. Jan. 28, 2015) (including in

Finally, even if the Class definition was impermissibly fail-safe, that still wouldn't be a proper basis to strike it because the issue "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *see also St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, No. 12-cv-02224, 2013 WL 1076540, at *6 (E.D. Mo. Mar. 13, 2013) (recognizing that "district courts have broad discretion to redefine the class in order to avoid issues that such a class definition may present."); *Haghayeghi v. Guess?, Inc.*, No. 14-cv-00020, 2015 WL 1345302, at *6 (N.D. Cal. Mar. 24, 2015) (denying a motion to strike a potentially fail-safe class definition because it is "more appropriate to address the issue in a motion for class certification.").

### b.    Plaintiff's Use of the Word "Legion" is not Scandalous or Prejudicial.

Defendant also argues that "Plaintiff's scandalous allegations relating to a 'legion' of consumer complaints being filed against SAC" should be stricken because they are supposedly "a bald-faced attempt to prejudice the Court against SAC and have no legal or factual bearing whatsoever on the matters to be decided…." (Def. Mot. at 4 ¶ 11.) The Court should only consider that argument long enough to reject it.

---

class definition all individuals who could establish that their property was similarly damaged by the "invasion" of certain particulates that originated from a specific defendant's plant); *Zarichny*, 80 F. Supp. 3d at 614 (including in proposed class individuals who received calls without consent that were "initiated using an automatic telephone dialing system"); *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (including in proposed class all individuals who are "entitled to relief"); *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 12-cv-221, 2013 WL 275568, at *4-5 (E.D. Mo. Jan. 24, 2013) (including in proposed class whether the individuals consented to receive faxes and whether they had an established business relationship with the defendant when there was no evidence of any sort of *en masse* fax transmission); *Sauter v. CVS Pharmacy, Inc.*, No. 13-cv-846, 2014 WL 1814076 (S.D. Oh. May 7, 2014) (including all individuals who received calls from an autodialer without providing prior express consent); *G.M. Sign, Inc. v. Franklin Bank, SSB*, 2007 WL 4365359 (N.D. Ill. Dec. 13, 2007) (including all individuals who were sent an "unlawful fax message" and for whom defendant could not show proof of consent).

"To strike material as scandalous it must be obviously false and unrelated to the subject matter of the action." *Gateway Bottling, Inc. v. Dad's Rootbeer Co.*, 53 F.R.D. 585, 588 (W.D. Pa. 1971) (citations omitted). It must also "cast[] a derogatory light on someone, use[] repulsive language, or detract[] from the dignity of the court." *Conklin v. Anthou*, No. 10-cv-02501, 2011 WL 1303299, at *1 (M.D. Pa. Apr. 5, 2011). And as noted above, "[t]he standard for striking under Rule 12(f) is strict…" *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004).

Here, Student Aid Center cannot in good faith argue that Plaintiff's use of the word "legion" to describe the number of online complaints filed is "scandalous." Rather than "cast a derogatory light on [Student Aid Center]" or "detract from the dignity of the court," *Conklin*, 2011 WL 1303299, at *1, Plaintiff's use of the word "legion" merely describes the vast number of complaints about its text messaging campaign available online, just as it was intended to. *See Merriam Webster Dictionary*: legion, *available at* http://www.merriam-webster.com/dictionary/legion (last accessed Oct. 7, 2015) (defining legion as, *inter alia*, "a very large number"). It is not in any way meant to disparage Defendant, but rather to provide the Court a clear picture of the number of complaints that have been raised and the claims at issue. Accordingly, Plaintiff's use of the term should not be stricken.

## IV.  Defendant's Request for a More Definite Statement Should be Denied.

Finally, Defendant argues that if the Court denies its motion to dismiss and motion to strike, it should at least require Plaintiff to provide a more definite statement given his "threadbare allegations and [] failsafe [sic] class definition," which "render[] Plaintiff's Amended Complaint so vague and ambiguous the SAC cannot reasonably prepare a response." (Def. Mot. at 12.) This argument also fails.

17

Like motions to strike, "[m]otions for a more definite statement are generally viewed with disfavor…particularly 'where the information sought by the motion could easily be obtained by discovery." *Gross v. Weinsten, Weinburg & Fox LLC*, --- F. Supp. 3d ----, 2015 WL 5012309, at \*4 (D. Del. Aug. 24, 2015); *Mielo v. Aurora Huts, LLC*, No. 14-cv-1162, 2015 WL 106631, at \*6 (W.D. Pa. Jan. 7, 2015) (recognizing that motions for a more definite statement are "highly disfavored.") (quotations and citations omitted). A motion for a more definite statement is generally only appropriate for "a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." *Country Classics at Morgan Hill Homeowner's Ass'n, Inc. v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367, 370-71 (E.D. Pa. 2011); *Mielo*, 2015 WL 106631, at \*6 (recognizing that, "[a] motion for a more definite statement is used to provide a remedy for an unintelligible pleading rather than as a correction for lack of detail.") (quotations and citations omitted).

Setting aside the fact that the Class definition is not fail-safe, Plaintiff's allegations are far from ambiguous. Plaintiff has alleged that the text messages were sent by or on behalf of Defendant Student Aid Center and Defendant Mozeo (FAC ¶¶ 11-12, 19-24), on specific dates and times (*id.* ¶¶ 26-27), provided the actual text messages at issue (*id.* ¶¶ 15, 17, 26-27), and alleged that they were all sent from the same short code (245-87), that they all included the same instructions, and that they all detailed that individuals were eligible for loan consolidation and/or forgiveness. (*Id.* ¶¶ 19, 24, 26-27, fig. 12, fig. 13.) If Defendant is unable to look within its own records to determine such things like (i) whether it partnered with Mozeo to send the text messages, (ii) during what period of time, (iii) what it and business partner Mozeo designed the content of the messages to be, and (iv) whether they used short code 245-87 to send the messages, it doesn't say so. And despite taking issue with the supposed lack of detail in the

complaint, it provides no suggestions on which of Plaintiff's allegations should be more definite—excluding, of course, the absurd argument that Plaintiff should have identified every single text message sent to each and every one of the potentially thousands of Class members and the failing argument that the Class definition is fail-safe. (Def. Mot. at 12.)

In any event, and given the high standard for Rule 12(e) motions, it is not surprising that other courts have rejected nearly identical arguments to those raised by Defendant here. *See, e.g., Panacci v. A1 Solar Power, Inc.*, No. 15-cv-532, 2015 WL 3750112, at *3, 9 (N.D. Cal. June 15, 2015) (denying motion for a more definite statement in a TCPA action when the "Defendants' Motion [was] not a true challenge to the intelligibility of the Complaint—because the Complaint [was] not intelligible—but rather, Defendants' Motion [was] a request for details that are plainly obtainable through discovery.") Accordingly, no more detail is necessary and Defendant's motion should be denied in this regard as well. *See Robbins v. Coca-Cola-Company*, No. 13-cv-132, 2013 WL 2252646, at *4 (S.D. Cal. May 22, 2013) (denying motion for a more definite statement in a TCPA because the "Defendant's present, cogent motion to dismiss belies any suggestion that the complaint is too vague for Defendant to frame a response.") (citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff Benjamin Abella respectfully requests that the Court enter an Order (i) denying Student Aid Center's Motion to Dismiss and Motion to Strike Plaintiff's First Amended Complaint or in the Alternative for a More Definite Statement in its

entirety, (ii) requiring Student Aid Center to answer his First Amended Complaint, and (iii)

awarding such other and further relief as the Court deems reasonable and just.[9]

Respectfully submitted,

**BENJAMIN ABELLA**, individually and on behalf
of all others similarly situated,

Dated: October 13, 2015

By: /s/ Courtney C. Booth
        One of Plaintiff's Attorneys

David S. Senoff (PA 65278)
dsenoff@cbmclaw.com
CAROSELLI BEACHLER MCTIERNAN & COLEMAN, LLC
1845 Walnut Street, Floor 15
Philadelphia, Pennsylvania 19103
Tel: 215.762.6153
Fax: 215.609.1351

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Courtney C. Booth (Admitted *Pro Hac Vice*)
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

---

[9]     In the event that the Court grants Student Aid Center's motion to dismiss (partially or otherwise), Abella respectfully requests that the Court grant him leave to add further detail, additional claims, or otherwise take the necessary steps to cure any defects found by the Court in his pleadings. *See, e.g., Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.") (citing G*rayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).

## <u>CERTIFICATE OF SERVICE</u>

      I, Courtney Booth, an attorney, hereby certify that on October 13, 2015, I served the above and foregoing ***Plaintiff's Opposition to Defendant's Motion to Student Aid Center, Inc.'s Motion to Dismiss*** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system, on this the 13th day of October 2015.

                                  /s/ Courtney C. Booth